UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHABASH LAWRENCE,<br>    *Plaintiff*,<br><br>    v.<br><br>LIEUTENANT THOMAS FINNUCAN,<br>et al.,<br>    *Defendants.* | No. 3:20-cv-1678 (VAB) |

**INITIAL REVIEW ORDER**

Shabash Lawrence, a formerly incarcerated unsentenced individual[1] in the custody of Connecticut Department of Correction ("DOC") filed a Complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against Lieutenant Finnucan, Correction Officer ("CO") Fowkles, Correction Officer Vaughn, Lieutenant Grady, and Warden N. Hines. Compl., ECF No. 1 (Nov. 6, 2020).

On December 1, 2020, Mr. Lawrence filed a motion to file an amended complaint against the same defendants. Mot. to Am. Compl., ECF No. 10 (Dec. 1, 2020) ("Am. Compl."). The Court construes Mr. Lawrence's motion to amend as an amended complaint, which asserts violations of his Fourteenth Amendment, Eighth Amendment and First Amendment rights. *Id.* ¶¶ 10, 16. Mr. Lawrence requests damages, a declaratory judgment and injunctive relief. *Id.* ¶¶ 18-19. Mr. Lawrence also has filed a Motion for Temporary Restraining Order and

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The Connecticut Judicial website reflects that Mr. Lawrence has a pending criminal case and has been released from custody.
https://www.jud2.ct.gov/crdockets/CaseDetail.aspx?source=Pending&Key=4ebe0f54-18ae-4cac-8f31-2ff489fd0a70.

1

Preliminary Injunction. Mot. for TRO and Prelim. Inj, ECF No. 11 (Dec. 1, 2020) ("Mot. for TRO and Prelim. Inj.").

For the following reasons, the Court will permit some of Mr. Lawrence's claims to proceed against the Defendants in their individual capacities.

## I.   FACTUAL BACKGROUND[2]

Mr. Lawrence alleges having been held in in-cell restraints while at Bridgeport Correctional Center ("BCC") on April 21, 2020. Am. Compl. ¶ 10.

That day, at 5:10 PM, Lieutenant Finnucan, CO Fowkles, and CO Vaughn allegedly entered his cell to check his in-cell restraints. *Id.* The medical unit, however, allegedly was not present to check the cuffs to ensure they were not improperly secured or too tight as required. *Id.* Lieutenant Finnucan allegedly took his pulse but there was no medical staff to check his pulse as required. *Id.* Lieutenant Finnucan allegedly stated that he "ha[d] something for [Mr. Lawrence]" that day, and Mr. Lawrence allegedly asked if he was being threatened. *Id.* Lieutenant Finnucan and COs Fowkles and Vaughn allegedly smirked at him and left his cell. *Id.*

Later, Lieutenant Finnucan allegedly yelled for Mr. Lawrence's door to open, and he entered Mr. Lawrence's cell and instructed him to sit on his bunk. *Id.* Lieutenant Finnucan allegedly pushed Mr. Lawrence as he was walking to his bunk, and Mr. Lawrence allegedly asked him not to push him. *Id.* Lieutenant Finnucan then allegedly sprayed him with mace and punched him in the face. *Id.* Lieutenant Finnucan, CO Fowkles, and CO Vaughn then allegedly punched Mr. Lawrence in the face, neck and back. *Id.* Mr. Lawrence allegedly screamed for the guards to stop the attack, but no one responded. *Id.*

---

[2] All factual allegations are drawn from the amended complaint. Am. Compl.

Lieutenant Finnucan allegedly sprayed Mr. Lawrence with again and punched and kicked him in the face, neck and back. *Id.* Lieutenant Finnucan allegedly ran to his cell door while CO Fowkles and CO Vaughn allegedly continued to attack Mr. Lawrence. *Id.* They allegedly continued to assault him although he was in in-cell restraints and there was no camera person to record the incident. *Id.* A correctional staff member with a camera allegedly arrived, and Mr. Lawrence allegedly was dragged out his cell into the shower to wash the mace off of his face with shower water. *Id.*

The next day, Lieutenant Grady allegedly visited Mr. Lawrence and allegedly told him that he would be escorted to the A&P room so that he could go to court due to his assault on DOC staff. *Id.* ¶ 11. Mr. Lawrence allegedly denied that he had assaulted any staff and asked Lieutenant Grady when he would be able to be released from in-cell restraint status. *Id.* Lieutenant Grady allegedly responded that he would make sure that Mr. Lawrence was not released. *Id.* Mr. Lawrence allegedly was later escorted to court. *Id.*

On April 24, 2020, Warden Hines allegedly toured Mr. Lawrence's cell block. *Id.* Mr. Lawrence stopped and told him about the assault by Lieutenant Finnucan, CO Fowkles, and CO Vaughn, and that they had allegedly come to his cell without medical staff or a staff member with a camera. *Id.* at ¶ 12. Warden Hines allegedly stated that staff had acted appropriately. *Id.* Mr. Lawrence allegedly told Warden Hines that he did not feel safe at BCC, and that he wanted to press charges against the correctional officers. *Id.* Warden Hines allegedly told Mr. Lawrence that inmates were not permitted to press charges against correction officer and would not provide him the papers necessary to do so. *Id.*

On April 24, 2020, Mr. Lawrence allegedly went to the medical unit for a follow-up to

check the stitches that had been necessary to treat his injuries caused by Lieutenant Finnucan and COs Fowkles and Vaughn. *Id.* at ¶ 13. Mr. Lawrence allegedly reported to the medical staff that he now hears voices due to the assault by correctional staff and he was prescribed medication for his emotional distress. *Id.*

## II.     STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous," "malicious," or "fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and

"enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555-57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101-02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

## III. DISCUSSION

In his complaint, Mr. Lawrence indicates alleges violations of the Eighth Amendment, First Amendment, Fourteenth Amendment, and DOC Administrative Directives.

As a preliminary matter, Mr. Lawrence must allege each defendant's personal involvement in the denial of his rights. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983.'" (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991))). The Second Circuit has defined "personal involvement" to mean direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (citation omitted). The Second Circuit has recently clarified that a plaintiff cannot rely on a "separate test of liability specific to supervisors" and that a "plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020). Once a plaintiff properly alleges that a defendant was personally involved in a constitutional deprivation, he or she "must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation." *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014).

The plaintiff's status, as either a convicted prisoner or pretrial detainee, determines the claims of misuse of force or conditions of confinement are analyzed under the Eighth Amendment or the Fourteenth Amendment. Claims of pretrial detainees involving misuse of force or indifference to unsafe conditions of confinement are considered under the Due Process Clause of the Fourteenth Amendment, but such claims brought by a sentenced prisoner are considered under the cruel and unusual punishment clause of the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29-34 & n.9 (2d Cir. 2017); *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 717-18 (S.D.N.Y. 2017). As public information available shows that Mr. Lawrence is a pretrial detainee, the Court will analyze his claim under the Fourteenth Amendment standard for the purposes of this initial review order.

Accordingly, any of Mr. Lawrence's Eighth Amendment claims will be dismissed.

1.   The Excessive Force Claim

In order to state an excessive force claim under the Fourteenth Amendment, Mr. Lawrence "'must show … that the force purposely or knowingly used against him was objectively unreasonable.'" *Fletcher v. City of New London*, No. 3:16-CV-241 (MPS), 2018 WL 4604306, at *10 (D. Conn. Sept. 25, 2018) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). "[O]bjective reasonableness turns on the facts and circumstances of each particular case." *Id.* (quoting *Kingsley*, 576 U.S. at 397). In *Kingsley*, the United States Supreme Court identified several relevant factors a court may consider in determining the reasonableness or unreasonableness of the force used:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 576 U.S. at 397. The determination is made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with 20/20 vision of hindsight." *Id.*

Mr. Lawrence alleges that, while on in-cell restraints, the Defendants assaulted him, although he was not acting in violation of any orders.

Accordingly, this Fourteenth Amendment claim based on the alleged misuse of force by Lieutenant Finnucan, CO Fowkles, and CO Vaughn will proceed against them.

Mr. Lawrence also alleges that Lieutenant Grady indicated that he would not release him from in-cell restraint status, despite Mr. Lawrence's alleged good behavior as reflected in his Behavioral Observational Chart. Am. Compl. ¶ 11. Construed most liberally, Mr. Lawrence's

7

allegations suggest that Lieutenant Grady intended to keep Mr. Lawrence on in-cell restraint status without a legitimate penological justification, which is sufficient to raise an inference of a Fourteenth Amendment violation based on use of excessive force. *See Kingsley*, 576 U.S. at 397.

Accordingly, the Court will permit this Fourteenth Amendment claim to proceed against Lieutenant Grady.

2. The Indifference to Safety Claim

Under the objective prong, a detainee must allege that "the conditions, either alone or in combination, pose[d] an unreasonable risk of serious damage to his health ... which includes the risk of serious damage to physical and mental soundness." *Darnell*, 849 F.3d at 30 (internal quotation marks and citations omitted). A district court evaluates the conditions to which the detainee was exposed in the context of contemporary standards of decency and addresses, *inter alia*, whether the detainee has been deprived of basic human needs including, for example, food, clothing, shelter medical care, and reasonable safety, or has been subjected to an unreasonable risk of serious harm to his or her future health. *Id.* The Court does not repeat the *mens rea* element that was previously articulated above.

Mr. Lawrence alleges that he informed Warden Hines of the "brutal[]" assault, that he did not feel safe at BCC, and that Warden Hines indicated he approved of the conduct by Lieutenant Finnucan and Cos Fowkles and Vaughn. Am. Compl. ¶ 12. These allegations are sufficient to raise an inference that Warden Hines acted with indifference to Mr. Lawrence's safety and failed to take any action after he was informed of the allegedly unjustified assault on Mr. Lawrence.

Accordingly, the Court will permit this Fourteenth Amendment claim based on the alleged indifference to Mr. Lawrence's safety to proceed.

3.     The First Amendment Retaliation Claim

In order to establish a First Amendment retaliation claim under Section 1983, a prisoner must allege: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009). Because of the potential for abuse and the "ease with which claims of retaliation may be fabricated," courts must examine prisoner retaliation claims with "skepticism and particular care." *Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001) (summary order).

Mr. Lawrence alleges a First Amendment violation based on the alleged conduct of Lieutenant Finnucan, CO Fowkles, and CO Vaughn. Am. Compl. ¶ 10. But he has not alleged that any of the defendants took retaliatory action against him due to his protected speech. *See Espinal*, 558 F.3d at 128.

Accordingly, this First Amendment retaliation claim will be dismissed.

4.     The First Amendment Police Report Claim

"The rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994). Furthermore, "it is axiomatic that filing a criminal complaint with law enforcement officials constitutes an exercise of the First Amendment right to petition government for the redress of grievances." *Estate of Morris ex rel. Morris v. Dapolito*, 297 F. Supp. 2d 680, 692 (S.D.N.Y. 2004) (internal quotation marks omitted).

Here, Mr. Lawrence alleges that Warden Hines would not permit him to make a police report about the correctional staff assault. Am. Compl. ¶ 12. Although Mr. Lawrence's

9

allegations are sparse, the Court will permit this First Amendment claim to proceed. But, to the extent that Mr. Lawrence asserts a constitutional violation based on his inability to gain a criminal investigation or prosecution against any of the Defendants, Mr. Lawrence has no "protected legal interest" in their criminal prosecution, *see Brown v. Volpe*, No. 15 CIV. 9004 (PAE), 2017 WL 985895, at *4 (S.D.N.Y. Mar. 13, 2017), or a "constitutional right to an investigation of any kind by government officials," *Banks v. Annucci*, 48 F. Supp. 3d 394, 414 (N.D.N.Y. 2014); *see also Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981) (inmates alleging beating by prison guards lack standing to challenge prison officials' request to magistrate not to issue arrest warrants); *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Joyce v. Hanney*, No. 3:05cv1477 (WWE), 2009 WL 563633, at *9 (D. Conn. Mar. 4, 2009) (finding that a prisoner had no "constitutionally protected right to have any defendant disciplined or prosecuted").

Accordingly, this claim will be limited to a First Amendment claim for the alleged denial of the right to seek relief from the alleged abuse.

5. <u>The Violation of the Administrative Directives Claims</u>

Mr. Lawrence asserts, under 42 U.S.C. § 1983, violations of DOC Administrative Directives. But any alleged failure to comply with prison regulations or administrative directives is not a basis for relief under Section 1983. *Fine v. UConn Med.*, No. 3:18-CV-530 (JAM), 2019 WL 236726, at *9 (D. Conn. Jan. 16, 2019) ( "[A] prison official's violation of a prison regulation or policy does not establish that the official has violated the Constitution or is liable to a prisoner under 42 U.S.C. § 1983.").

Accordingly, these claims will be dismissed.

6.     The Official Capacity Claims

In *Ex parte Young*, 209 U.S. 123 (1908), the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. *Id.* at 155-56; *see In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005). "A plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007).

The exception to Eleventh Amendment immunity, however, "does not permit judgments against state officers declaring that they violated federal law in the past." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993).

Mr. Lawrence seeks a declaratory judgment that the defendants have violated his rights. Am. Compl. ¶ 18. He also seeks an injunctive order for the defendants to stop harassing him and stop violating his rights. *Id.* ¶ 19; Mot. for TRO and Prelim. Inj.

Accordingly, Mr. Lawrence's request for a declaratory judgment that the defendants violated his rights in the past is barred by the Eleventh Amendment. Likewise, any claims for money damages against the defendants, who are state employees, in their official capacities are barred by the Eleventh Amendment. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

As the record shows that Mr. Lawrence has been released and is no longer housed at BCC, his claims for injunctive relief against the defendants in their official capacities are now moot. *See Shepherd v. Goord*, 662 F.3d 603, 610 (2d Cir. 2011) ("[A]n inmate's transfer from a

11

prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."); *Salahuddin v. Goord,* 467 F.3d 263, 272 (2d Cir. 2006) (same); *see also McAlpine v. Thompson*, 187 F.3d 1213, 1217-18 (10th Cir. 1999) (noting that eight other "circuit[s that have] consider[ed] the issue ha[ve] decided that release to parole moots a claim regarding prison conditions and regulations" and so holding (emphasis omitted)). Accordingly, the official capacity claims for injunctive relief will be dismissed without prejudice, and the Motion for a Temporary Restraining Order and Preliminary Injunction will be found as moot.

## IV. ORDERS

The Court enters the following orders:

(1) The case shall proceed on Mr. Lawrence's Fourteenth Amendment individual capacity claims against Lieutenant Finnucan, Lieutenant Grady, Correction Officer Fowkles, and Correction Officer Vaughn based the use of excessive force; on his Fourteenth Amendment individual capacity indifference to safety claim against Warden Hines; and on his First Amendment individual capacity claim against Warden Hines based on the alleged failure to permit Mr. Lawrence to make a police report. The Motion for Temporary Restraining Order and Preliminary Injunction is **DENIED** as moot. Mot. for TRO and Prelim. Inj.

All other claims are **DISMISSED** without prejudice. If Mr. Lawrence believes he can allege facts to cure the deficiencies identified in this ruling, he may file a motion to amend and attach an amended complaint by **June 11, 2021**.

(2) The Clerk of Court shall verify the current work addresses for Lieutenant Thomas Finnucan, Correction Officer Fowkles, Correction Officer Vaughn, Lieutenant Grady, and Warden Hines with the DOC Office of Legal Affairs, mail a waiver of service of process request

packet containing the complaint to them at their confirmed addresses by **June 4, 2021**, and report on the status of the waiver request by **June 11, 2021**. If any Defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that Defendant, and that Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk of Court shall mail a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(4) Defendants shall file a response to the Complaint, either an Answer or motion to dismiss, by **August 13, 2021**. If Defendants choose to file an Answer, Defendants shall admit or deny the allegations and respond to the cognizable claim recited above. Defendants may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed by **November 12, 2021**. Discovery requests need not be filed with the Court.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7) All motions for summary judgment shall be filed by **December 10, 2021**.

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If Mr. Lawrence changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in

the dismissal of the case. Mr. Lawrence must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr. Lawrence has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendants or defense counsel of his new address.

**SO ORDERED** at Bridgeport, Connecticut, this 7th day of May, 2021.

                                                /s/ Victor A. Bolden
                                                Victor A. Bolden
                                                United States District Judge